905 F.2d 798
 Charles Michael DeWITT, Plaintiff-Appellant,
v.
A STATE FARM INSURANCE COMPANIES RETIREMENT PLAN FOR UNITED
STATES EMPLOYEES; The Employees Group Life and Accidental
Death and Dismemberment Insurance Plan; The Employees and
Agency Managers Group Accidental Death and Dismemberment
Plan; State Farm Mutual Automobile Insurance Company, Plan
Administrator, Defendants-Appellees.
 No. 89-2469.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 2, 1990.
Decided June 15, 1990.
 
 Joseph John D'Erasmo, D'Erasmo, Shure & Perez (argued), Rockville, Md., for plaintiff-appellant.
 Judith Carol Appelbaum (argued) and Jeffrey Dunoff (on brief), Reichler,
 Appelbaum & Wippman, Washington, D.C., for defendants-appellees.
 Before ERVIN, Chief Judge, and HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 K.K. HALL, Circuit Judge:
 
 
 1
 Charles DeWitt appeals an order of the district court granting the motion for summary judgment of appellee State Farm Insurance Companies Retirement Plan for United States Employees ("State Farm" or "Plan"), in a declaratory judgment action brought by appellant pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Secs. 1001, et seq. DeWitt challenges the determinations of the Plan Administrator denying him benefits under State Farm's Retirement and Accidental Death and Dismemberment ("AD & D") Plans. Finding no error, we affirm.
 
 I.
 
 2
 DeWitt became an employee of State Farm Automobile Insurance Company in February 1968. On September 1, 1969, under the provisions of State Farm's retirement plan as then written, he began accumulating credited service toward retirement. The retirement plan provides retirement benefits for employees beginning at age 55, as well as disability benefits if, on the "date of disablement," the member's age plus his accumulated credited service exceed 55 years.
 
 
 3
 Throughout his career with State Farm, DeWitt experienced severe health problems. His initial difficulties involved his vision; by 1980, the combination of a subretinal hemorrhage in his right eye and glaucoma in both eyes had severely restricted his ability to see. A 1982 operation to reduce the glaucoma was partially successful; however, he was soon diagnosed with cataracts in both eyes. By March 1985 he had lost most of his vision in his right eye, and could see to read or drive with his left only with substantial difficulty. Meanwhile, beginning in 1980, DeWitt has suffered from chronic kidney disease. In June 1984, a kidney transplant was performed in order to save his life. The kidney transplant operation is the key event relevant to this appeal.
 
 
 4
 The transplant operation was performed June 16, 1984. During the surgery, the surgeons erroneously severed the right common iliac artery in DeWitt's right leg. Before the surgeons realized their error, appellant suffered irreversible nerve damage in his right foot. Consequently, DeWitt's foot is now flaccid, and is useless.
 
 
 5
 In early 1985, with his paid sick leave running out, DeWitt met with State Farm about his future employment. Because his former job required extensive field work, State Farm refused to reinstate him in that position. Instead, State Farm offered DeWitt a lower-paying, sedentary office job, though it attempted to minimize the initial hardship on DeWitt by reducing his salary in stages. DeWitt refused this offer, and he was terminated on July 22, 1985.
 
 
 6
 DeWitt filed claims for retirement disability under State Farm's retirement plan and for total disability under its AD & D and group life insurance plans. These claims were denied. On October 7, 1987, appellant brought this action in the district court for a declaratory judgment pursuant to ERISA that he is entitled to benefits under all three plans. DeWitt moved for partial summary judgment, and State Farm for summary judgment on all claims. State Farm's motion was granted on February 17, 1989. Four days later, the Supreme Court issued its decision in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), in which the Court held that courts should use a de novo standard of review in ERISA cases brought for review of a benefits determination, unless the plan involved vests discretion in the plan trustee to interpret its doubtful or ambiguous provisions. In the latter case, courts need only review the trustee's decision for an abuse of discretion. Because Bruch increased the degree of scrutiny of federal courts in ERISA reviews, appellant moved to vacate the court's summary judgment in favor of State Farm. The court agreed, vacated its order, and reconsidered in light of Bruch. By memorandum opinion entered August 22, 1989, the court again granted State Farm's motion for summary judgment. The court held that the retirement plan vested the administrator with the broad discretion that the Bruch court intended to except from de novo review, and it reaffirmed its prior ruling. On DeWitt's AD & D and group life insurance claims, the court conducted a de novo review and again granted appellee's motion. This appeal followed, limited to the retirement disability and AD & D claims.
 
 II.
 
 7
 On appeal, DeWitt argues that the denial of retirement disability benefits should have been subjected to de novo review, and that the denial of benefits was an abuse of discretion in any event. In support of this latter argument, he asserts two theories which would give him sufficient "credited service" to qualify for retirement disability benefits. Finally, he argues two claims for entitlement to benefits under the AD & D plan.
 
 
 8
 DeWitt first posits that the retirement plan trustee's denial of benefits should have been subjected to de novo review. State Farm counters that the plan vests ample discretion in its administrator to avoid such review under Bruch. The plan provides:The plan administrator shall have the power ... to make all determinations that the plan requires for its administration, and to construe and interpret the plan whenever necessary to carry out its intent and purpose and to facilitate its administration. All such rules, regulations, determinations, constructions and interpretations made by the plan administrator shall be binding....
 
 
 9
 This Court has twice decided the "discretion" question since Bruch. Both times, we found that the plan at issue did vest discretion in the plan administrator. The language quoted above is at least as broad as, if not broader than, that involved in the two previous cases. See De Nobel v. Vitro Corporation, 885 F.2d 1180, 1186 (4th Cir.1989); Boyd v. Trustees of United Mine Workers Health and Retirement Funds, 873 F.2d 57, 59 (4th Cir.1989). Therefore, the district court correctly limited its review of the retirement disability denial to the "abuse of discretion" standard.
 
 III.
 
 10
 We agree with the district court that the administrator's denial of retirement disability was not an abuse of discretion. DeWitt could only qualify for retirement if, on his "date of disablement," the sum of his age and his credited service exceeded 55 years. The plan defines "date of disablement" as
 
 
 11
 the first workday of any period of time during which the active or Canadian member does not report to work for the company because of total disability by reason of accidental bodily injury or sickness.
 
 
 12
 The first workday missed by DeWitt because of his kidney surgery mishap was June 18, 1984. On that date, the sum of his age and credited service was 54 years, 326 days. In other words, he failed to qualify for retirement disability by 39 days. Had he worked a single day after July 9, 1984, and had then been unable to continue, the Plan Administrator concedes he would have qualified. This result is harsh, but faithful to the language of the plan, and plainly not an abuse of the Plan Administrator's discretion.
 
 IV.
 
 13
 Appellant makes two additional arguments, the objective of each of which is to find more than 39 additional days to credit to his pre-disablement service. First, he argues that when the plan was amended in 1976 to make employees eligible to begin earning credited service on their 25th birthdays (instead of on the September 1 following their 25th birthdays), his date of initial credited service was retroactively pushed back from September 1, 1969, to May 15, 1969 (DeWitt's 25th birthday). He rests this argument on the following passage from the plan:
 
 
 14
 Any member of the plan as of August 31, 1976 shall continue to be a member on September 1, 1976 in accordance with the provisions of this amended and restated plan.
 
 
 15
 State Farm counters that this provision merely states that members of the old plan automatically continued to be members of the new plan, and that nothing in the plan purports to apply the 1976 amendments retroactively. Moreover, State Farm notes that every year DeWitt was sent an annual retirement statement that listed his retirement disability vesting date as July 9, 1984. The Plan Administrator's interpretation is reasonable, and under the applicable deferential standard of review, it easily passes muster.
 
 V.
 
 16
 DeWitt next argues that his "date of disablement" should be moved forward beyond July 9, 1984, because, he asserts, he continued to earn credited service (while on sick leave) until April 1985. State Farm does not dispute that DeWitt remained a member of the plan and continued to earn credited service after his injury. Nonetheless, says State Farm, "date of disablement" is not defined as an employee's last day of credited service, but rather as the last day he worked. Again, this interpretation withstands "abuse of discretion" review.*
 
 VI.
 
 17
 DeWitt advances two claims for benefits under State Farm's AD & D Plan. Becuase this plan does not confer the sort of discretionary authority in its administrator as does the retirement plan, the district court correctly concluded that benefits determinations under it are subject to de novo review.
 
 
 18
 First, DeWitt argues that he has suffered an "actual severance" of his right foot, and is therefore entitled to one-half of the principal sum of the AD & D policy. DeWitt asserts that the severance of an artery in his leg, causing a loss of use of his foot, is an "actual severance" of the foot. The pertinent provision of the plan reads:
 
 
 19
 "Member" means hand, foot, or eye. "Loss" means, with regard to hand or foot, actual severance through or above the wrist or ankle joints; with regard to eye, entire and irrecoverable loss of sight....
 
 
 20
 State Farm makes the obvious arguments. First, in ordinary English usage, severance of a hand or foot means its actual amputation. Moreover, had this provision been intended to cover loss of use of a hand or foot, there would have been no reason to define "loss" separately for eyes (where loss of use is enough). State Farm's position is supported by the majority of courts. This court addressed the issue in a case of first impression under South Carolina law, and decided that "actual severance" is not ambiguous, and that it should be construed literally, not as a "functional severance." Reid v. Life Insurance Co. of North America, 718 F.2d 677 (4th Cir.1983). Therefore, the district court properly granted State Farm summary judgment on this issue.
 
 VII.
 
 21
 Finally, DeWitt argues that his claim for total disability benefits under the AD & D policy contained material issues of fact that precluded summary judgment. He enhances this argument by mischaracterizing the disability provision at issue as an "occupational," rather than "general," disability clause. The difference between the two is substantial. An "occupational" disability policy provides benefits if the claimant is unable to perform his regular job; a "general" disability policy provides benefits if the claimant is unable to perform any job for which he is qualified. See Annotation, "Insurance: 'Total Disability' or the Like as Referring to Inability to Work in Usual Occupation or in Other Occupations," 21 A.L.R.3d 1155 (1968 & Supp.1989).
 
 
 22
 State Farm's AD & D policy provides total disability benefits if, as a result of an accidental injury, the employee is
 
 
 23
 completely [unable] ... to engage in any occupation or employment for which [he] is fitted by reason of education, training or experience for the remainder of [his] life.
 
 
 24
 This is a general disability provision. On the record before the district court, there was clearly no dispute that appellant's kidney surgery mishap had not rendered him unable to obtain any fitting gainful employment. Hence, its grant of summary judgment in State Farm's favor was not error.
 
 
 25
 The judgment of the district court is affirmed.
 
 
 26
 AFFIRMED.
 
 
 
 *
 We are aware that a split panel of the Sixth Circuit has sustained a similar argument by a beneficiary in a case involving the very same retirement plan at issue here. Edwards v. State Farm Mutual Automobile Insurance Co., 851 F.2d 134 (6th Cir.1988). Without necessarily endorsing the result of that case, we note that it is easily distinguishable. In Edwards, the beneficiary had only been given a summary of the plan instead of the plan itself, and the court held that the summary contained language that might have misled the beneficiary. In this case, DeWitt admitted on deposition that he received and reviewed the entire plan before he left State Farm. Finally, we note that we have been hesitant to allow a plan summary to prevail where the summary explicitly states that the text of the plan governs all disputes. De Nobel, 885 F.2d at 1195