**Ralph BLOCK, Appellant,**

v.

**PITNEY BOWES INC., et al., Appellees.**

No. 89-7039.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 15, 1991.
Decided Jan. 21, 1992.

Mark A. Packman, with whom Edward N. Leavy, Washington, D.C., was on the brief, for appellant.

Ronald A. Lindsay, with whom Deborah A. Folloni, Washington, D.C., was on the brief, for appellees. Peter Chatilovicz, Washington, D.C., also entered an appearance for appellees.

Before RUTH BADER GINSBURG and SILBERMAN, Circuit Judges, and VAN GRAAFEILAND,* Senior Circuit Judge.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

Concurring opinion filed by Senior Circuit Judge VAN GRAAFEILAND.

---

* Of the United States Court of Appeals for the Second Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. As Block described the occurrence, he had just left a customer's office carrying an electronic

RUTH BADER GINSBURG, Circuit Judge:

Plaintiff Ralph Block appeals from a summary judgment granted to Pitney Bowes Inc. in an action under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), alleging improper denial of long-term disability benefits. *See Block v. Pitney Bowes Inc.*, 705 F.Supp. 20 (D.D.C.1989). We conclude, first, that the district court's decision is consistent with instructions on the appropriate review standard later furnished by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In accord with the district court, we hold that defendant "acted reasonably and legally" in determining that Block was not eligible for continued benefits under Pitney Bowes' long-term disability plan. *See* 705 F.Supp. at 25. We therefore affirm the district court's judgment.

## I.

In October 1983, Block fell and suffered a serious and painful injury in the course of his employment as a Pitney Bowes Washington, D.C. sales representative.[1] In April 1984, Block applied for total disability benefits under the company's plan. The plan provided for "total disability" benefits if an employee

> is unable, because of injury or illness, to engage in any gainful occupation or profession for which he is reasonably fitted by education, experience, capability or training, except approved Rehabilitative Employment, as determined by the [Plan Administrative] Committee on the basis of periodic medical examinations.

Pitney Bowes Inc. Long Term Disability Plan, as amended January 1, 1983 (Plan) § 2.19. In late May 1984, Dr. Johnson, Block's principal treating physician

scale that weighed between 70 and 90 pounds. Not noticing that the sidewalk was uneven, Block tripped, twisting his left ankle, and fell, his right leg snapping and buckling underneath him.

throughout this matter, performed arthroscopic surgery on Block's knee, and Dr. Levine, Pitney Bowes' Medical Director, recommended that the Plan Administrative Committee grant Block temporary total disability benefits for a period of several months. The Committee granted the recommended benefits, which ran from April through September 1984.

In September 1984, Dr. Levine recommended terminating Block's disability benefits, based on medical information received from Dr. Johnson indicating that Block could work a full day subject to limitations on standing (two hours), walking, lifting (20 pounds), and bending (four out of eight hours). These limitations prevented Block from resuming his previous sales representative job or filling any other position in Pitney Bowes' Washington, D.C. office.

Relying on Dr. Levine's recommendation, the Committee concluded that Block was no longer "totally disabled," and therefore terminated his benefits on October 1, 1984. Block sought reconsideration of this decision, submitting to the Committee reports from two other doctors, both of whom reported that Block would not be able to return to work in the near future. The Committee reaffirmed its denial in December 1984, and did so again in two 1985 administrative reviews. In these reviews, the Committee accepted Dr. Levine's assessment that the additional submissions by Block did not undermine the opinion of Block's treating physician, Dr. Johnson, that Block was able to return to restricted work. Following notice of the Committee's third adherence to the decision denying benefits, Block sought judicial review under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[2]

## II.

At the time of the district court's decision, federal appellate courts were divided on the appropriate standard of judicial review for benefit determinations made by ERISA-plan administrators. Following this circuit's precedent, the district court said the governing standard was one of "reasonableness" or, using the formulation jurists have coined, "the arbitrary and capricious standard." 705 F.Supp. at 22 ("The key to the arbitrary and capricious standard is that if there is more than one action that is considered 'reasonable,' the Court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable.").[3]

In *Firestone*, issued several weeks after our district court's decision, the Supreme Court resolved the standard of review issue. Summarizing its ruling, the Court wrote:

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

489 U.S. at 115, 109 S.Ct. at 956. Decisions of administrators made for plans in the latter group, the Court indicated, are reviewable only for reasonableness. *See id.* at 107–09, 111, 113, 109 S.Ct. at 952–53, 954, 955.

The Pitney Bowes Plan before us, we think it evident, is of the kind that "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See id.* at 115, 109 S.Ct. at 956. The Plan vests in the Administrative Committee power "to interpret and construe the Plan, [and] to determine all questions of eligibility and the status and rights of Participants." Plan § 7.7(a). Committee decisions "shall, to the extent not inconsistent

---

**2.** Section 1132(a)(1)(B) provides that "[a] civil action may be brought—(1) by a participant or beneficiary ... (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...."

**3.** The district court noted, however, that, even under a "tougher standard of contractual analysis," it would uphold the Committee's decision regarding Block. *Id.*

with the provisions of the Plan, be final and conclusive and binding upon all persons having an interest in the Plan." Plan § 7.4. In trust law, as the Supreme Court pointed out, when the trustee has thus been given "power to construe disputed or doubtful terms, ... the trustee's interpretation will not be disturbed if reasonable." *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954.

Empowering language similar to the provisions quoted from the Pitney Bowes Plan has been comprehended, almost invariably, as conveying "discretionary or final authority," *see id.* at 112, 109 S.Ct. at 955, of the kind that courts check only for reasonableness. *See id.* at 111, 109 S.Ct. at 954; *e.g., Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 568, 105 S.Ct. 2833, 2839, 86 L.Ed.2d 447 (1985) (discretionary authority found in trust agreement providing that "any construction [of the agreement's provisions] adopted by the Trustees in good faith shall be binding"), *quoted in Firestone,* 489 U.S. at 111, 109 S.Ct. at 954; *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1141 (7th Cir.1990) (trustees have discretionary authority under provisions conferring "power to construe [plan] provisions" and further stating that "any construction adopted by the [t]rustees in good faith is binding"); *De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1186 (4th Cir.1989) (administrators have discretionary authority in view of their power "[t]o determine all benefits and resolve all questions pertaining to the administration, interpretation and application of Plan provisions") (emphasis omitted); *Curtis v. Noel,* 877 F.2d 159, 161 (1st Cir. 1989) (discretionary authority conferred by language charging administrators to determine "which Employees are eligible to participate in the Plan" and to "provide all parties dealing with the Plan an interpretation of Plan provisions on request").[4]

Block contends, nevertheless, that use of the word "discretion" in another provision of the Plan, section 6.1, shows that the Committee lacks discretion elsewhere. Plan § 6.1 provides in relevant part: "The Trustees ... shall have exclusive authority and discretion to manage and control the assets of the Plan...." This section on asset management tracks language in the pertinent ERISA section 403, 29 U.S.C. § 1103(a): the "trustees shall have exclusive authority and discretion to manage and control the assets of the plan...."

We think it untenable to argue that use of the word "discretion" in the context of plan asset management implies the absence of discretion in provisions authorizing plan administrators to construe the plan, determine all questions of eligibility, and render final, conclusive, and binding decisions. *See* Plan §§ 7.7(a), 7.4, excerpted *supra* p. 5. The Maryland district court called the "magic word" argument "incomprehensible" and "totally without merit." *Steever v. Bristol–Myers Co.,* 727 F.Supp. 986, 989 (D.Md.1989). We agree with those characterizations.

The Court in *Firestone* surely did not suggest that "discretionary authority" hinges on incantation of the word "discretion" or any other "magic word." Rather, the Supreme Court directed lower courts to focus on the breadth of the administrators' power—their "authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956. We follow in this regard the Fourth Circuit's decision in *De Nobel:*

> There are obviously no magic words required to trigger the application of one or another standard of judicial review.... [I]t ... need only appear on the face of the plan documents that the fiduciary has been "given [the] *power* to construe disputed or doubtful terms"—or to resolve disputes over benefits eligibility—in which case "the trustee's interpre-

---

4. Under *Firestone,* reasonableness review is in order if the administrator has "discretionary authority to determine eligibility for benefits *or* to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. at 956 (emphasis added). Thus,

§ 7.7(a) (power to "interpret and construe" the plan) *or* § 7.4 (power to make "final and binding" decisions) of the Pitney Bowes Plan, standing alone, would probably meet the *Firestone* test for deferential review.

tation will not be disturbed if reasonable."

885 F.2d at 1187 (quoting *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954) (emphasis in original). What counts, in sum, is the character of the authority exercised by the administrators under the plan. Here, that authority fits precisely what the *Firestone* decision delineated as "discretionary."

## III.

■ *Firestone* itself involved a termination pay plan that did not give the administrator authority to construe ambiguous terms or to make "final and conclusive" eligibility determinations. *See* 489 U.S. at 111, 109 S.Ct. at 954. The Supreme Court therefore declared *de novo* review the applicable standard. *Id.* at 115, 109 S.Ct. at 956. In declaring the *de novo* standard applicable to the plan in *Firestone*, the Supreme Court contrasted *de novo* review with a standard of "deference," sometimes indicated by the term "arbitrary and capricious review," other times signaled by the phrase "abuse of discretion." *See id.* at 109–11, 113–15, 109 S.Ct. at 953–54, 955–56.

Some post-*Firestone* decisions, dealing with plans that "give[ ] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *see id.* at 115, 109 S.Ct. at 956, speak dominantly of judicial control for "abuse of discretion." *See, e.g., Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir. 1990); *DeWitt v. A State Farm Ins. Cos. Ret. Plan*, 905 F.2d 798, 800 (4th Cir.1990). Other decisions invoke the "arbitrary and capricious" formulation. *See, e.g., Exbom*, 900 F.2d at 1141–42; *Lakey v. Remington Arms Co.*, 874 F.2d 541, 544 (8th Cir.1989). In view of the Supreme Court's alternating references, these lower court formulations seem to us unremarkable.

The distinction, if any, between "arbitrary and capricious review" and review for "abuse of discretion" is subtle. *Cf. Ass'n of Data Processing Service Organizations, Inc. v. Board of Governors of Federal Reserve System*, 745 F.2d 677, 684 (D.C.Cir.1984) (Scalia, J.) (distinction between substantial evidence test and arbitrary or capricious test is " 'largely semantic' ") (citations omitted). In the matter at hand, we are satisfied, there is no need to adopt one phrase and avoid the other. The reasonableness of the Plan Committee's decision is our polestar, as commentary relating to Administrative Procedure Act analogs almost uniformly affirms. *See* Section of Administrative Law, American Bar Association, *Scope-of-Review Doctrine: Restatement and Commentary*, 38 AD-MIN.L.REV. 233, 292 (1986) (in dealing with components of "arbitrariness" review under the Administrative Procedure Act catch-all scope-of-review provision,[5] commentators drew no distinctions among the terms "arbitrary, capricious, [or] an abuse of discretion"); B. SCHWARTZ, ADMINISTRATIVE LAW § 217 at 609 (1976) ("[j]udicial power over discretion ... crystallized in the 'arbitrary, capricious, and abuse of discretion' clause of the Federal Administrative Procedure Act" tests decisions and actions for "reasonableness"); 5 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 29:7 at 363 (1984) (refining verbalisms about scope of review is, at best, unprofitable).

The essential inquiry here, in short, is what the district court understood it to be: Did the Committee reasonably construe and apply the Pitney Bowes Plan in Ralph Block's case?

## IV.

■ Concerning the Plan's construction, Block urges that the term "totally disabled" in Plan § 2.19, *see supra* pp. 2–3, is properly read to include any employee who is physically unable to resume his previous job. As the district court indicated, however, *see* 705 F.Supp. at 23, it was certainly reasonable for the Committee to interpret the Plan's provision as a "general" disability clause, not as an "occupational" one:

An "occupational" disability policy provides benefits if the claimant is unable to perform his *regular* job; a "general"

---

**5.** This provision, 5 U.S.C. § 706(2)(A), directs a reviewing court to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

disability policy provides benefits if the claimant is unable to perform *any* job for which he is qualified.

*DeWitt*, 905 F.2d at 802 (emphasis in original).

Block next complains that the Committee furnished no vocational evidence of jobs for which he was "reasonably fitted by education, experience, capability or training." *See* Plan § 2.19. The Plan, however, called for determinations of total disability "on the basis of periodic medical examinations." *Id.* No provision required Pitney Bowes, as a condition of terminating Block's compensation, to "ensure the availability of an alternative job." *See Jestings v. New England Telephone & Telegraph Co.*, 757 F.2d 8, 11 (1st Cir.1985).

We recognize that plan administrators are not at liberty to distort vocational evidence put before them. *See Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan*, 874 F.2d 496, 498–99 & n. 2 (8th Cir.1989) (injured oil rig worker whose doctor certified he could perform clerical or sedentary work, but who also stated that such jobs would require retraining, satisfied the definition for total disability, which excluded jobs requiring additional training or education). But here, medical evidence indicated that Block could fill a sales position involving desk and telephone work, some walking, driving, and visiting with clients. 705 F.Supp. at 24. The medically-indicated limitations, *see supra* p. 1452, were not so great, nor Block's occupation so specialized, that the Committee could be called unreasonable for refusing to conclude that sales positions in the D.C. area for which Block could qualify were scarce.

Block also charges that the medical evidence before the Committee was treated inconsistently. Specifically, Block complains that while Dr. Levine recommended temporary total disability benefits in connection with Block's arthroscopic surgery in May 1984, Dr. Levine did not recommend such benefits following a second arthroscopic procedure in February 1985. This alleged discrepancy, however, falls far short of demonstrating an unreasonable Committee decision. Dr. Johnson, Block's

treating physician, had determined, *after* Block's first surgery, that Block could work a full day with certain limitations. By the time of the second operation, the Committee had more evidence from various examinations. The additional evidence did not contradict Dr. Johnson's conclusion following the first surgery. Dr. Levine, moreover, considered the operating doctor's report on the second surgery and advised the Committee that neither that report nor the other new information indicated any change warranting reversal of the Committee's denial.

Each time Block sought reconsideration, the Committee reviewed the medical evidence before it. It is true, as the district court stressed, that "throughout their handling of the case, the administrators relied most heavily on the conclusions of Dr. Johnson, who was [Block's] treating physician, and who examined [him] approximately 20 times." 705 F.Supp. at 24. Reliance on the physician most closely connected to the case hardly ranks as unreasonable. *Cf. Hensley v. Washington Metropolitan Area Transit Authority*, 655 F.2d 264, 272–73 & n. 13 (D.C.Cir.1981) (reversing workers' compensation administrative decision in light of testimony of two treating physicians, which merited greater weight than testimony of a physician who examined claimant solely in connection with the compensation claim, and on only one occasion), *cert. denied*, 456 U.S. 904, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982).

Finally, Block argues that the Social Security Administration's award of disability benefits to him in 1989 demonstrates the arbitrariness of the Committee's 1985 final decision. The Social Security award, however, rested at least in part on medical reports never submitted to the Committee. Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum. *See, e.g., Jones*, 906 F.2d at 482 (in reviewing plan trustees' fact findings, courts consider "only the evidence presented to the trustees"); *Steever*, 727 F.Supp. at 989 (courts "will review only those facts available to the Plan Adminis-

trator at the time of his decision"). We therefore accord no weight to the Social Security Administration's determination.

### Conclusion

For the reasons stated, the decision of the district court granting summary judgment to Pitney Bowes is

*Affirmed.*

VAN GRAAFEILAND, Circuit Judge, concurring in result:

Our duties as an intermediate appellate court are two-fold in nature. First, we are duty-bound to decide issues before us in accordance with the law as laid down by the Supreme Court. *See Holcomb v. Murphy,* 701 F.2d 1307, 1310 (10th Cir.), *cert. denied,* 463 U.S. 1211, 103 S.Ct. 3546, 77 L.Ed.2d 1394 (1983); *United States v. City of Philadelphia,* 644 F.2d 187, 192 n. 3 (3d Cir.1980); *In re Continental Inv. Corp.,* 586 F.2d 241, 248 (1st Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979). Second, we should make our stare decisis pronouncements as clear as possible so that our district court judges and future litigants will have no misunderstanding as to how the law will be applied in this circuit. *See Matter of McLynn,* 739 F.2d 1395, 1401 (9th Cir. 1984). We should not misinterpret what the Supreme Court has said in order to achieve a desired result in a particular case. If we are satisfied that a trial court reached the correct result but on grounds different from those prescribed by the Supreme Court, we should say so and affirm with that understanding. *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937); *Office & Professional Employees Int'l Union, Local 2 v. Washington Metro. Area Transit Auth.,* 724 F.2d 133, 139 (D.C.Cir.1983). Because I am troubled by the manner in which my colleagues justify their decision to affirm, I write separately.

It is clear beyond cavil that the plan administrators in the instant case had discretionary authority to interpret and construe the plan and to determine all questions of eligibility. Accordingly, our pivot-al task is to decide whether the district court used the proper standard in reviewing the administrators' exercise of that discretion. In *Holt v. Winpisinger,* 811 F.2d 1532, 1535 (D.C.Cir.1987), we said, quoting *Danti v. Lewis,* 312 F.2d 345, 348 (D.C.Cir. 1962), that the proper test is " 'whether the trustees have acted arbitrarily, capriciously or in bad faith; that is, is the decision of the Trustees supported by substantial evidence or have they made an erroneous decision on a question of law.' " That was the law of this circuit when the district court announced its decision, and the district court, citing *Holt* and *Danti, supra,* quite properly applied it:

> Most federal appellate courts have ruled that a court reviewing a decision of a plan's trustees under ERISA may overturn the decision only if it is found to be arbitrary, capricious, made in bad faith, or in derogation of law. The District of Columbia Circuit follows this standard.

*Block v. Pitney Bowes Inc.,* 705 F.Supp. 20, 22 (D.D.C.1989) (citations omitted).

Unless the above-quoted law of the circuit was changed by the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), this panel, following established principles of stare decisis, should not take it upon itself to alter it. Although the courts of appeal that have considered the question are not in agreement concerning whether *Firestone* effected a change in the standard of review, I agree with those courts which hold that it has. *See Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481 (9th Cir.1990); *Batchelor v. Int'l Bhd. of Elec. Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441, 442–43 (5th Cir.1989); *Boyd v. Trustees of the United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989).

The principal issue in the instant case is the same as was before the Supreme Court in *Firestone,* viz., "plan interpretation". 489 U.S. at 108, 109 S.Ct. at 953. Was the administrators' denial of benefits to Block based upon a correct interpretation of the term "total disability" as defined in the

plan? The *Firestone* Court said that "ERISA abounds with the language and terminology of trust law", and that "[i]n determining the appropriate standard of review for actions under § 1132(a)(1)(B), we are guided by principles of trust law." *Id.* at 110–11, 109 S.Ct. at 953–54. It then quoted section 187 of the Restatement (Second) of Trusts, which states: "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." *Id.* at 111, 109 S.Ct. at 954.

A fair reading of the Court's discussion that followed demonstrates that it adopted the American Law Institute's abuse of discretion standard of review and rejected the arbitrary and capricious standard of review that had been adopted by most federal courts. *See id.* at 113–14, 109 S.Ct. at 955–56. The Court held that, unless a plan gives the administrator discretion to determine eligibility for benefits or to construe the terms of the plan, a denial of benefits should be reviewed under a *de novo* standard. *Id.* at 115, 109 S.Ct. at 956. More to the point, the Court concluded: "Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' Restatement (Second) of Trusts § 187, Comment d (1959)." *Id.*

One might contend that the last quoted statement is substantially dictum because the *Firestone* administrator did not have discretionary authority. However, the Court was not pronouncing dictum when it said that the abuse of discretion standard of section 187 was the proper one to apply. *Id.* at 111, 114, 109 S.Ct. at 954, 956.

Although it is obvious to me that the Supreme Court discerned a difference in meaning between the terms "arbitrary and capricious" and "abuse of discretion", my colleagues apparently disagree. I have no desire to engage them in the type of semantic exchange that has troubled judges, lawyers and commentators in their discussions of administrative law appeals. *See* 5 Kenneth C. Davis, *Administrative Law Treatise* ch. 29 (2d ed. 1984). As Professor Davis wisely said, "refining the verbalisms about scope of review is not merely unprofitable but harmful." *Id.* at 363.

It cannot be gainsaid, however, that it is more difficult to define and compare two separately-worded standards than it would be to define only one. If, as my colleagues contend, the two terms at issue herein have substantially the same meaning, there is no need to "clutter up the law", *id.*, with unnecessary complexities and explanations. I would simply hold that the proper standard is "abuse of discretion" and affirm on the ground that, while the district court did not apply the correct rule of law, the result it reached was the same as if the correct rule had been applied. *See Lowry v. Bankers Life & Casualty Retirement Plan*, 871 F.2d 522, 524–25 (5th Cir.1989).