Kelvin MOORE, Plaintiff–counter–defendant–Appellant,

v.

BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN, employee benefit plan, Defendant–counter–claimant–Appellee.

No. 07–55139.

United States Court of Appeals, Ninth Circuit.

Submitted May 7, 2008.*

Filed June 13, 2008.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.   R.App. P. 34(a)(2).

**600**

Douglas K. Devries, Esq., Devries Law Firm, Sacramento, CA, Robert K. Scott, Esq., Joel S. Poremba, Esq., Law Offices of Robert K. Scott, Irvine, CA, for Plaintiff–counter–defendant–Appellant.

Douglas W. Ell, Esq., Groom Law Group, Chtd., Washington, DC, Thomas H. Bienert, Jr., Esq., Bienert & Krongold, San Clemente, CA, for Defendant–counter–claimant–Appellee.

Before: FISHER and PAEZ, Circuit Judges, and ROBART, District Judge.**

MEMORANDUM ***

Former professional football player Kelvin Moore appeals from the district court's grant of summary judgment in favor of the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Plan"). The district court granted the Plan's motion for summary judgment, concluding that the Plan's Retirement Board ("the Board") did not abuse its discretion in terminating Moore's claim for disability benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand.

** The Honorable James L. Robart, United States District Judge for the Western District of Washington, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

The Plan gives the Board full discretionary authority to construe the terms of the Plan and to determine eligibility for benefits. We therefore review for abuse of discretion the Board's decision to terminate Moore's benefits. *See Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1102 (9th Cir.2006); *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir.2005).

Here, Moore's impairment was described as "serious" or "significant" by the physicians who examined him, one of whom specifically noted that a vocational expert was needed to determine the type of employment Moore could attempt in light of his limitations. Even if this physician's suggestion could be disregarded, *see Boyd*, 410 F.3d at 1179, the medical evidence is unanimous that Moore's symptoms are "quite disabling in his day to day activities since he is unable to sit or stand for any length beyond one to two hours" and that he is "significantly limited in his residual functional capacity." On this record, it is not clear whether there is "any occupation or employment for remuneration or profit" that Moore could perform.

Although "consideration of vocational evidence is unnecessary where the evidence in the administrative record supports the conclusion that the claimant *does not have an impairment* which would prevent him from performing some identifiable job," *McKenzie v. Gen. Tel. Co. of Cal.*, 41 F.3d 1310, 1316–17 (9th Cir.1994) (emphasis added), the record in this case does not demonstrate that consideration of vocational evidence was "unnecessary."[1] *See id.* (adopting the principle that this court

1. We respectfully disagree with the dissent that "Moore never offered or demanded vocational testimony before the Board or on appeal." Dissent at 7. Before the Board, the physicians that examined Moore commented on the need for vocational evidence both di-

decides "on a case-by-case basis, whether under the particular facts the plan administrator abused its discretion by not obtaining the opinion of a vocational rehabilitation expert"), abrogated on another issue by *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863 (9th Cir. 2008). In the absence of vocational testimony that there was, in fact, a job that Moore could perform given his substantial impairments, the Board's decision to terminate Moore benefits was not "based upon a reasonable interpretation of the [P]lan's terms." *See Boyd,* 410 F.3d at 1178 (quotation removed).[2] Moore's claim that California state law applies to his claim, however, is without merit.

We reverse and remand to the district court with instructions to remand to the Plan for consideration of appropriate vocational evidence, including but not limited to the opinion of a vocational rehabilitation expert.

**REVERSED AND REMANDED, with instructions.**

ROBART, District Judge, dissenting:

I respectfully dissent. As a reviewing court, we may not simply ignore the unanimous medical conclusion that Mr. Moore is no longer totally and permanently disabled because his significant impairment does

---

rectly and indirectly by noting that Moore required "modifications" to any employment he might attempt. In our view, this sufficiently raised the issue for the Board's consideration. And, in any event, the Board never offered Moore a chance to "offer" vocational testimony because the letter terminating Moore's benefits did not give him "[a] description of any additional material or information" that was "necessary" for him to "perfect the claim," in violation of 29 C.F.R. § 2560.503–1(g). Moore nevertheless raised the issue in his appeal letter to the Board when he argued that his substantial impairments "prevented [him] from working or pursuing a career." Nor did Moore subsequently abandon this issue. On appeal before the district court and before us, Moore pursued the issue when he argued that the Board had failed to "identif[y] realistic employment opportunities within the marketplace that could actually be performed by Moore ... given the significant problems he has experienced for nearly four years post-injury."

**2.** We respectfully disagree with the dissent that our reading of *McKenzie* transforms it "into a single-factor test in which vocational testimony is required...." Dissent at 1. Nor does the dissent's discussion of *McKenzie* or *Block v. Pitney Bowes Inc.,* 952 F.2d 1450, 1455 (D.C.Cir.1992), persuade us on this question. These cases are easily distinguished because neither the claimant in *McKenzie* nor the claimant in *Block* was substantially impaired. *See also Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1309 (5th Cir.1994)

(concluding that vocational evidence was not required where "Duhon was a sixty-five year old man in overall good health with a high school diploma and moderate restrictions on his physical ability."). McKenzie was a "highly educated" fifty-two-year-old person "[with] a slight impairment ... [who] appears healthy and normal." *McKenzie,* 41 F.3d at 1317–18. The record in that case supported the conclusion that "McKenzie not only could work at other occupations which did not involve heavy exercise, but he may even be able to work at his old occupation." *Id.* at 1318. In *Block,* the court explained that Block's "medically-indicated limitations ... were not [ ] great" and that "medical evidence indicated that Block could fill a sales position involving desk and telephone work, some walking, driving, and visiting with clients." 952 F.2d at 1455. In fact, the issue in *Block* was whether the plan had to rebut with vocational evidence Block's contention that the "sales positions in the D.C. area for which Block could qualify were *scarce.*" *Id.* (emphasis added). Contrary to the dissent's analogy, this case is not like *Block* because the medical evidence in *Block* demonstrated that Block could "fill a sales position" for which he was already trained. There is no such evidence here—the issue is whether Moore can do *any* job in light of his undisputed and substantial impairments, not whether a *job* for which Moore was qualified might be readily available.

not prevent him from performing "sedentary" or "light" work with restrictions. I do not agree that a vocational expert, accepting the uncontroverted medical testimony that Moore is capable of performing a broad class of work, could possibly conclude that he is incapable of performing "any occupation" even on a part-time basis. The Board did not abuse its discretion by following the Plan's plain language and adopting as final and binding the medical opinion of a physician empowered to resolve medical disputes.

The majority errs in three significant ways. First, it disregards the ERISA abuse of discretion standard. Second, it transforms the totality of the circumstances standard set forth in *McKenzie v. Gen. Tel. Co. of Cal.*, 41 F.3d 1310, 1317 (9th Cir.1994), into a single-factor test in which vocational testimony is required regardless of whether the record shows that an admittedly significant impairment does *not* prevent a claimant from performing some identifiable job. Third, it ignores the Plan's language and the medical evidence in order to argue a point that Moore himself never emphasized because it was belied by his own citation to numerous unskilled, low-paying jobs that he argued he could not, as a former professional football player, be "reasonably expected" to take.

An ERISA administrator, such as the Board, abuses its discretion only if it "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir.2005). The majority holds that "the Board's decision to terminate Moore's benefits was not 'based on a reasonable interpretation of the [P]lan's terms.'" Majority Op. at 4–5 (citation omitted). Because, however, it pays scant attention to the Plan's terms, the majority

fails to explain how the Board could have abused its discretion by accepting the medical conclusions of the same neutral physicians who detailed the extent of Moore's impairment.

No one—not the physicians who examined him, nor the Board who adopted the physicians' reports, nor the district court that carefully considered the descriptions of his physical symptoms—contests that Moore has a significant impairment or that he would benefit from vocational training. Thus, the proper question to ask is whether the vocational rehabilitation information that the majority now orders was meant to assist Moore in obtaining future employment, or whether it was required because the Board cannot deny him benefits "based upon a reasonable interpretation of the plan's terms" in the absence of such vocational testimony. *See Boyd*, 410 F.3d at 1178 (quotation removed). Only the latter reason gives this court the authority to find an abuse of discretion. The majority states that the second examining physician "specifically noted that a vocational expert was needed to determine the type of employment Moore could attempt in light of his limitations." Majority Op. at 2. It fails to note that the second examining physician made this statement directly after concluding that Moore can engage in "sedentary to light work," and that all three physicians went into great detail about Moore's significant physical symptoms in order to *support* their conclusion that he was capable of performing a broad class of work. The majority thus holds that the Board could not have reasonably accepted the conclusions of three neutral physicians because they all did too fine a job of describing Moore's significant impairments. Such counterfactual reasoning is what the *McKenzie* court sought to deter.

In *McKenzie,* this court held that a reviewing court is to look at the totality of

the record to determine whether vocational testimony is necessary:

> [C]onsideration of vocational evidence is unnecessary where the evidence in the administrative record supports the conclusion that the claimant does not have an impairment which would prevent him from performing some identifiable job.

41 F.3d at 1317. The majority correctly notes that *McKenzie* does not prohibit a reviewing court from requiring a plan administrator to seek vocational evidence, i.e., under the proper circumstances, a plan administrator will have abused its discretion by not collecting vocational evidence. The majority errs, however, by declining to apply the language in *McKenzie* that contradicts its conclusion. Its misreading of *McKenzie* is highlighted by its careful use of italics: it is unnecessary to consider vocational evidence where the "record supports the conclusion that the claimant *does not have an impairment* which would prevent him from performing some identifiable job." Majority Op. at 3 (quoting *McKenzie*). Focusing on whether Moore had an impairment—which every disability claimant admittedly has-allows the majority to ignore the determinative element of the *McKenzie* standard, whether the evidence in the "record supports the conclusion that the claimant does not have an impairment *which would prevent him from performing some identifiable job.*" *McKenzie*, 41 F.3d at 1317 (emphasis added). The *McKenzie* inquiry does not begin and end at detailing the extent of an impairment the existence and extent of which no one denies.

The majority never examines the Plan's relevant terms and their application to the evidence. Doing so reveals that the Plan treats the determination of total and permanent disability as a medical inquiry. The Plan's administrator may refer a claimant to a neutral physician for "an adequate determination respecting his physical and mental condition." Plan § 5.3. Here, the first two neutral, examining physicians, including the one who originally found Moore to be totally and permanently disabled, found that he had a significant impairment that did not prevent him from performing "light" or "sedentary" work with certain restrictions. The Plan provides that when there are "[m]edical disputes," the question of "whether a claimant medically is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit" may be submitted to a Medical Advisory Physician ("MAP") for a final and binding decision. Plan § 8.3(a). Even though there was no disagreement about Moore's impairments or disability, the Board referred him to a MAP, who similarly opined that Moore could engage in light or sedentary work with restrictions. The Board was required to, and did, adopt the MAP's conclusion that Moore was not medically unable to engage in "any occupation."

The *McKenzie* court noted that "[i]n this case, as in *Duhon*, the language of the 'any occupation' standard is not demanding." *McKenzie*, 41 F.3d at 1317 (referring to *Duhon v. Texaco, Inc.*, 15 F.3d 1302 (5th Cir.1994)). The implication is that if the "any occupation" clause were more demanding, e.g., required an inability to work within the same profession, vocational proof may have been required. In *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1455 (D.C.Cir.1992), a case on which *McKenzie* relied, then-Judge Ruth Bader Ginsburg noted that vocational evidence was unnecessary in part because "[n]o provision required Pitney Bowes, as a condition of terminating Block's compensation, to ensure the availability of an alternative job." (quotation removed). The implication is that if a clause conditions termination of benefits on ensuring the availability of an alternative job, vocational evidence might have been required.

Here, as in *Block,* there is no requirement that the Board ensure the availability of an alternative job. Furthermore, the "any occupation" clause at issue is exceedingly broad:

> [A player] will be deemed to be permanently disabled if the Retirement Board or the Disability Initial Claims Committee finds that he has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit. . . .

Plan § 5.2. Numerous courts have held that under the "any occupation" standard, a claimant is not totally disabled if he or she can perform even part-time work. *See, e.g., Brigham v. Sun Life of Can.,* 317 F.3d 72, 85–86 (1st Cir.2003) (holding that the plan administrator did not act arbitrarily and capriciously in denying total disability benefits to a paraplegic with ongoing and significant muscle strain and pain, where the claimant could be retrained for part-time work in sedentary jobs); *Bond v. Cerner Corp.,* 309 F.3d 1064, 1067 (8th Cir.2002) (holding that claimant's part-time work barred her from establishing that she could not continuously perform the substantial and material duties of "any occupation"); *Ladd v. ITT Corp.,* 148 F.3d 753, 754 (7th Cir.1998) (holding that a worker is not disabled if capable of engaging in "substantial gainful activity" on a part-time basis); *Doyle v.*

*Paul Revere Life Ins. Co.,* 144 F.3d 181, 185–86 (1st Cir.1998) (holding that although a claimant's capacity "may have been limited to part-time work," this did not compel the conclusion that he was totally disabled where the plan defined that term as being when a claimant is "completely prevented from engaging in any occupation").

Although the medical testimony is unanimous that Moore could perform a broad category of jobs, the majority remands this case so that the Board can solicit vocational testimony about what specific job, if any, Moore could perform. That is a surprising holding on an abuse of discretion review given that Moore never offered or demanded vocational testimony before the Board or on appeal.[1] There is a simple reason for this. One of Moore's primary arguments is that the Plan's definition of "total and permanent disability" must refer to a total disability from playing football. He proposes that, as a former NFL defensive back without a college degree, he could not "reasonably expect" to work as a toll booth clerk, file clerk, typist, or counter-person at Burger King. (Appellant's Br. 3, 25.) Under the plain language of the Plan, however, if he is capable of performing any of these easily identifiable sedentary or light occupations, even part-time, he is no longer totally and permanently disabled.

If we, like the Board, had full discretionary authority to construe the terms of the Plan and to determine eligibility for bene-

---

1. The majority takes issue with this statement, suggesting that the Board violated 29 C.F.R. § 2560.503–1(g) by not informing Moore that he could offer vocational testimony in order to "perfect the claim." Majority Op. at n. 1. The Plan is, however, silent about whether vocational testimony could be offered, i.e., it neither requires nor restricts vocational evidence. Presuming that the Board should have afforded Moore the opportunity to provide vocational testimony that it did not know, until today, was required would suggest that the Board should have exercised precognition. It is undisputed that Moore argued that the Board erred by not collecting vocational evidence. His difficulty—and a possible reason for why he complained about vocational evidence but never presented such evidence for review—is that his ability to perform a broad class of jobs illustrates his ability to perform the more easily provable subset "any occupation."

fits, we might request vocational evidence based on the second physician's suggestion—after his conclusion that Moore is capable of performing "sedentary to light work"—that Moore "would need vocational rehabilitation followed by appropriate vocational expert determination." But as a reviewing court, I cannot see how it serves justice or our jurisprudence to remand this case and order the Board to collect vocational evidence. Even if the second physician's opinion conflicted with rather than confirmed the other medical opinions, the Board could have reasonably rejected the call for vocational evidence based on the two other physicians' reports, especially the MAP's binding one. *See Boyd*, 410 F.3d at 1179 ("[E]ven a single persuasive medical opinion may constitute substantial evidence upon which a plan administrator may rely in adjudicating a claim."); *see also Johnson v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 468 F.3d 1082, 1087 (8th Cir.2006) (noting that it was reasonable for the Retirement Board to give greater weight to a particular medical opinion because "[t]he Board, as plan administrator, had the authority to weigh the conflicting testimony and come to a reasonable conclusion"); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir.2004) (discussing the plan administrator's duty to weigh conflicting evidence and come to a conclusion with which reasonable people could disagree). On remand, the Board may rely upon the merest shred of evidence that Moore could work part-time as a toll booth clerk to deny him total and permanent disability benefits. *See, e.g., Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1473 (9th Cir.1993) ("In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion."), *abrogation on other grounds recognized by Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872 n. 2 (9th Cir.2008). Furthermore, no vocational expert could apply the uncontroverted medical testimony regarding Moore's ability to perform sedentary and light work and fail to find in the vast United States economy "some identifiable job" that he could perform. In *McKenzie*, this court sought to obviate the need for such superfluous hoop-jumping.

The Board—comprised of three members appointed by the NFL Players Association and three members appointed by the NFL Management Council—did not abuse its discretion by unanimously accepting the binding and uncontradicted opinion of a neutral examining physician about Moore's physical ability to perform a broad category of sedentary or light jobs without soliciting vocational testimony about what those jobs specifically might be. I am unable to conclude that a finding that Moore is capable of performing sedentary or light work with certain restrictions meets the "substantially unable to engage in any occupation" standard established in the Plan. I therefore dissent.