Phillip S. MORALES, et al., Plaintiffs,

v.

**INTELSAT GLOBAL SERVICE CORP., et al., Defendants.**

**Civil Action No. 04-1044 (GK)**

United States District Court,
District of Columbia.

Signed August 22, 2012

Marni Elaine Byrum, McQuade Byrum PLLC, Alexandria, VA, Lawrence P. Postol, Seyfarth Shaw LLP, Washington, DC, for Plaintiffs.

Wayne A. Schrader, Edward Lee Isler, Lindsay B. Burke, Mark Edward Papadopoulos, Isler Dare Ray Radcliffe & Connolly PC, Vienna, VA, for Defendants.

## MEMORANDUM ORDER

Gladys Kessler, United States District Judge

Plaintiffs have filed a Motion to Enforce Consent Decree and Hold Defendants in Contempt [Dkt. No. 92] for failing to comply with a Consent Decree and Final Judgment ("Consent Decree"). That Consent Decree, entered September 25, 2007, by Judge James Robertson [Dkt. No. 59], settled a class action by retirees of Defendant Intelsat Global Service Corp. to enforce their retiree health benefits. Based upon the Motion, the Opposition of Defendants [Dkt. No. 99], the Reply of Plaintiffs [Dkt. No. 100], and the oral argument held on August 20, 2012, the Court concludes that the Motion shall be **denied** for the following reasons.

■ Plaintiffs, in a civil contempt action, must show by "clear and convincing evidence" that a court order has been violated and the provisions of that order are themselves "clear and unambiguous." United States v. Microsoft Corp., 147 F.3d 935, 940 (D.C.Cir.1998); see also Washington–Baltimore Newspaper Guild, Local 35 v. Washington Post Co., 626 F.2d 1029, 1031 (D.C.Cir.1980). Plaintiffs have failed to carry their "heavy burden." Microsoft, 147 F.3d at 940.

The Consent Decree incorporates the Intelsat Qualifying Retiree Group Health Plan ("the Plan"). The Plan contains a commonly used "coordination of benefits" provision which explains which insurance will be the primary payer where coverage may be available under more than one plan. In this case, the coordination of benefits clause provides that the Plan will reduce benefit payments to each retiree by the amount that Medicare has paid or would pay for that retiree's Medicare claims.

Plaintiffs, who are approximately twenty individuals and their spouses, out of an original class of approximately 630 individuals and their spouses, maintain that such coordination of Plan benefits with Medicare Part A coverage is permitted only when the Plan participant has actually se-

cured Medicare Part A coverage or could enroll in Medicare Part A without additional payment. Because Plaintiffs have not worked enough quarters of employment for which Medicare and Social Security taxes were paid, they do have to make fairly substantial additional payments in order to purchase Medicare Part A benefits.[1] See 42 C.F.R. § 406.5(b).

In practical terms, Defendants are refusing to pay costs that would normally be covered by Medicare Part A because Plaintiffs could receive Medicare Part A coverage by paying a monthly premium. Therefore, Plaintiffs must cover these costs out-of-pocket or pay the monthly premiums to obtain Medicare Part A coverage on their own. Plaintiffs believe that they should not have to obtain Medicare Part A coverage to avoid the out-of-pocket expenses and that Defendants should cover these costs.

The dispute regarding Plaintiffs' additional payments now comes down to the meaning of two specific paragraphs contained in the Plan's United Health Care Summary Plan descriptions. Those two paragraphs read as follows:

The Plan "reduces its benefits as described below for Covered Persons who are eligible for Medicare when Medicare would be the Primary Coverage Plan. Medicare benefits are determined as if the full amount that would have been payable under Medicare was actually paid under Medicare, even if the person is entitled but not enrolled for Medicare. Medicare benefits are determined as if the person were covered under Medicare Parts A and B."

*"If you are eligible for or enrolled in Medicare, please read the following information carefully.* If you are eligible for Medicare on a primary basis (Medicare pays before Benefits under the Plan), you **should** enroll for and maintain coverage under both Medicare Part A and Part B. If you do not enroll and maintain that coverage, and if we [the Plan] are the secondary payer as described in (Section 7: Coordination of Benefits), we will pay Benefits under the Plan as if you were covered under both Medicare Part A and Part B. As a result, you will be responsible for the costs that Medicare would have paid and you will incur a larger out-of-pocket cost" (emphasis in original).

These contract provisions clearly state that the Plan will reduce its benefits for "Persons who are eligible for Medicare . . . Medicare benefits are determined as if the full amount that would have been payable under Medicare was actually paid under Medicare <u>even if the person is entitled but not enrolled for Medicare</u>" (emphasis added). The second paragraph also clearly states that the employee "<u>should</u> enroll for and maintain coverage under both Medicare Part A and Part B" (emphasis in original). That same paragraph states that if the retiree does not enroll and maintain that coverage for which she is eligible, and if Defendants are the secondary payer of benefits, Defendants "will pay Benefits under the Plan as if you were covered under both Medicare Part A and Part B. As a result, <u>you will be responsible</u> for the costs that Medicare would have paid and <u>you will incur a larger out-of-pocket cost</u> (emphasis added).

---

1. Counsel agreed at oral argument that of the twenty Plaintiffs, there were different factual scenarios. For example, some Plaintiffs had been paying into Medicare by virtue of employment other than working at Intelsat. In such cases, their premiums would be adjusted to take into account payments that had already been made to the Medicare and Social Security system.

Plaintiffs contend that they are not "entitled" to Medicare because they are required to pay premiums to obtain such coverage. That argument is not persuasive in light of the language and explanation contained in the Plan itself.

While that language does not specifically say that a retiree must purchase Medicare coverage, it does say that the retiree "should enroll for and maintain coverage" and that if she fails to do so, she "will incur a larger out-of-pocket cost." Critically, the paragraphs regarding coordination of benefits apply by their own terms to both Medicare Part A and Part B. Because everyone must pay a premium for Medicare Part B, under Plaintiffs' interpretation of "entitled," these paragraphs would be entirely nonsensical since Plan participants would never have to purchase Medicare Part A or Part B and would never "incur a larger out-of-pocket cost."

■ In sum, at the very least, Plaintiffs cannot show that the terms clearly and unambiguously bear the meaning they advance, as they must to prevail on a motion for contempt. Microsoft, 147 F.3d at 940. For this reason alone, Plaintiffs' Motion must be denied.

Nonetheless, Plaintiffs argue that their interpretation must be correct because the fact that some members of the class might have to pay for Medicare Part A coverage was neither negotiated between the parties nor discussed in the lengthy "fairness hearing" before Judge Robertson. Plaintiffs are wrong about what took place at the hearing before Judge Robertson. At the hearing, counsel for Defendant stated, "in terms of Medicare eligibility, Your Honor, the question is really a dollars question. If you don't have 40 quarters you still can be eligible for Medicare. You may simply have to pay something for part A that someone who has worked for 40 quarters would not have to pay" (emphasis added). Fairness Hearing Tr. at 57:1-6, July 12, 2004. Thus, both the language of the Plan and the settlement discussed at the fairness hearing specifically state that Plaintiffs might have to incur larger out-of-pocket costs.

Moreover, the fact that there were not lengthy discussions over the meaning of these provisions does not indicate that Plaintiffs' interpretation is correct. Plaintiffs are essentially trying to write additional language into the Plan that might have been desirable, but simply is not there. Moreover, if Plaintiffs' counsel had any doubts about the meaning of the language in the Plan, those doubts should have been raised either during negotiations or at the fairness hearing.

Plaintiffs also rely on Defendants' practices under the pre-settlement plan. However, the purpose of that settlement was to replace the old plan with a newly-negotiated one. Indeed, the Plan specifically states:

This Plan replaces the Prior Retiree Health Plan, which shall have no further force or effect with respect to any benefits or services from and after the Effective Date of the Plan.

Virtually identical language is included in the Settlement Agreement between the parties which provides that:

Upon Intelsat's adoption of the Plan as of the Effective Date, the Prior Retiree Health Plan will have no force or effect with respect to any benefits or services provided from and after the Effective Date.

Thus, the Plan itself indicates that Plaintiffs should not rely on past practices and precludes their consideration here.

Finally, Plaintiffs have chosen to bring this contempt motion rather than take an appeal of the denial of their benefits in an ERISA administrative proceeding. In such proceedings, deference is paid to the deci-

sion of the plan administrator and her decision and stand so long as it is not unreasonable, arbitrary, or capricious, so long as the plan's language "reasonably supports" that interpretation. Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1453 (D.C.Cir.1992). While Plaintiffs certainly have the right to chose what procedure will be most advantageous to them, as noted earlier, the burden of proof is far higher in a motion for contempt for failure to enforce a consent decree than for review of a prior administrator's decision.

**WHEREFORE**, it is this 22nd day of August, 2012, hereby

**ORDERED**, that Plaintiffs' Motion to Enforce Consent Decree and Hold Defendants in Contempt is **denied;**[2] and it is further

**ORDERED**, that Plaintiffs' Motion to Compel Discovery [Dkt. No. 101] is **denied;** and it is further

**ORDERED**, that Defendant's Motion for Protective Order [Dkt. No. 102] is **denied as moot.**

---

**2.** Plaintiffs' counsel has asked in the title of the Motion in the alternative, for leave to file an ERISA complaint. Such request must be made by a separate Motion so that opposing counsel has an opportunity to respond.