Carlotta J. SAMPSON, Plaintiff,

v.

CITIBANK, F.S.B.

and

Short–Term Disability Benefits Plan of Citibank, N.A. and Participating Companies,

and

Long–Term Disability Benefits Plan of Citibank, N.A. and Participating Companies, Defendants.

No. Civ.A. 98–CV–1272JLG.

United States District Court, District of Columbia.

May 27, 1999.

Andrew Grosso, Washington, D.C., Theodore S. Allison, Washington, D.C., for plaintiff.

Ronald Stephen Cooper, Steptoe & Johnson L.L.P., Washington, D.C., for defendants.

## MEMORANDUM

JUNE L. GREEN, District Judge.

Before the Court are three separate motions for summary judgment: one by Defendant Citibank, another by the two disability plans (the Short–Term Disability Plan and the Long–Term Disability Plan

(collectively "the Disability Plans")) and a third by Plaintiff Carlotta Sampson for Partial Summary Judgment. Oral argument was heard on May 24, 1999. For the reasons that follow the Defendants' Motions are granted, the Plaintiff's motion is denied and this case is dismissed.

## BACKGROUND

This is a wrongful termination and employment benefits discrimination action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (1994), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (1994), and the Federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*[1] The ERISA claims are directed against the Disability Plans, while the ADA and FMLA claims are directed against Citibank.

The following are material facts as to which there are no genuine disputes. Plaintiff Carlotta Sampson worked for Defendant Citibank (or its predecessor) beginning in 1984 until June of 1995. She was an Assistant Branch Manager whose duties typically required her to be present every weekday and occasionally on Saturdays. Decl. of Andre F. Shaw, Citibank Ex. M.

Plaintiff was covered by two disability plans: a short-term plan and a long-term plan. Each provides for benefit payments (covering different time periods) when a covered employee is unable to work because of a disability.

On April 26, 1995, Plaintiff began an extended sick leave for what she alleges was severe asthma complicated by gastrointestinal reflux. On May 2, 1995, Plaintiff notified Aetna that she had seen

her physician, Doctor Frank Finnerty, and was unable to return to work. She sought and was approved for short-term disability benefits from April 26 through May 30, 1995. On May 30, 1995, Plaintiff successfully sought to extend her disability leave and was approved to June 7, 1995. Aetna Life Insurance Co., responsible for administering the Disability Plans, recommended that Plaintiff see a pulmonary specialist in mid-May to determine her condition and whether she was, in fact, disabled. As a result, Plaintiff was examined by Dr. Carl Schoenberger on May 25, 1995. Among other things, Dr. Schoenberger concluded that Plaintiff had "a well documented history of asthmatic bronchitis which appear[ed] to be under excellent control at the moment." (Ltr. by Dr. Schoenberger to Dr. Finnerty dated 5/30/95.)

Following the examination by Dr. Schoenberger, a nurse (employed by a company hired by Aetna to assist in disability evaluations) completed a form describing the physical requirements of Plaintiff's job at Citibank, which was then given to Plaintiff's personal physician, Dr. Finnerty. On a second form, Dr. Finnerty answered "yes" to the question: "Can the client work an 8-hour day?" (*See* Forms from Comprehensive Rehabilitative Associates, June 6, 1995, Disability Plans' Attachments 5 & 6, to Ex. E.) The purpose of these forms was to assist in evaluating whether Plaintiff was capable of performing her duties given her condition.

On June 6, 1995, the Plaintiff was informed that the June 7 return to work date would not be extended and that she was expected back at work. Plaintiff did not return to work. On June 12, 1995, Dr. Finnerty sent a letter to Aetna stating that

---

1. Several other claims and another Defendant, Aetna Life Insurance Company, Inc., were dismissed by the Court by Memoranda and Orders dated November 18, 1998 and February 16, 1999. In the Memorandum and Order of February 16, 1999, the Court dismissed Counts Two, Six, Seven, Eight, Nine, and a portion of Count Ten of the First Amended Complaint. The only remaining

Counts are One (ERISA violations by the Plans), Three and Four (ADA claims against Citibank), and Five (FMLA against Citibank). The part of Count Ten that seeks redress under ERISA against Citibank (29 U.S.C. § 1140) (interference with protected rights) was withdrawn by Plaintiff at the oral argument on May 24, 1999, and it is, therefore, dismissed.

the Plaintiff was still disabled and that he did not mean to imply on the form he had completed that she was, in fact, ready to return to work at that time. (Ltr. of Dr. Finnerty to David Charrier, June 12, 1995.) Although the letter discussed a future appointment with a gastroenterologist, it did not give the reasons for Dr. Finnerty's opinion that the Plaintiff was disabled and gave no estimate as to when or if Plaintiff could return to work. *Id.*

On June 26, 1995, the Medical Director, responsible for the Disability Plans, reviewed Plaintiff's file and upheld the June 7 return to work date.[2] Plaintiff had no further contact with Aetna after she was notified by letter dated June 29, 1995 of the final decision. (Letter of Joanne Hollinger, R.N., June 29, 1995.) By letter dated September 1, 1995, Plaintiff was terminated from Citibank for failure to return to work following an approved absence, effective June 7, 1995 (June 6 being the last day of her approved leave). (Letter of Milagros Santiago Vega, 9/1/95.)

Plaintiff never expressly requested uncompensated leave under the FMLA, despite being advised in writing of that option on at least three occasions. (Letters from Joan Huff, 5/11/95, 6/12/95 and 6/29/95, which included a separate notice concerning FMLA leave, *see* Decl. of David Charrier, ¶ 9, Def.Ex. E.)

**DISCUSSION**

A motion for summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court

must view the material presented in the light most favorable to the non-moving party, *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and resolve all doubts as to facts or the existence of facts against the moving party. *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Here, discovery has concluded and the record is sufficient for the Court to rule as a matter of law on those facts that are not disputed.

*Motion by Disability Plans for Summary Judgment and Motion by Plaintiff for Partial Summary Judgment*

■ The only claim against the Defendant Disability Plans is the ERISA claim seeking lost disability benefits. The Disability Plans seek summary judgment of this claim on the basis that the Medical Director's decision declining to extend the disability period was not arbitrary or capricious, and, therefore, cannot be overturned. The Plaintiff opposes and files her own motion seeking summary judgment on this issue.

■ Under the ERISA framework, a Disability Plan that has discretion with regard to eligibility benefits may only have its decisions judicially reviewed under the arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Block v. Pitney Bowes, Inc.* 952 F.2d 1450, 1452 (D.C.Cir.1992). The parties agree that the Disability Plan has such discretionary authority and also agree that the arbitrary and capricious standard of review therefore applies here. Pl. Mtn. for Partl. Sum. J. at 4. Review of a decision under this standard is deferential and limited to deciding whether it was reasonable. " 'The Court must not overturn a

**2.** The file consisted of medical notes referencing the Plaintiff ("Healthline Notes"); the examination and pulmonary function test of Plaintiff by Dr. Schoenberger done on May 25 and 30; the June 6, 1995 CRA form and the June 12 follow-up letter both signed by Dr. Finnerty; a letter from Dr. Susan Lesser dated June 20, 1995; a discharge summary from Sibley Memorial Hospital; a history and physical from Dr. Edward Tsou dated March 29, 1991; Laboratory reports dated May 4, 1995; and office notes from Dr. Finnerty from June 1993 through May 1995. *See* Citibank Ex. E–12.

decision found to be reasonable, even if an alternative decision also could have been considered reasonable.'" *Block* at 1452 (citations omitted).

Here, the Medical Director reviewed Plaintiff's entire file prior to making a final decision. The file contained many materials relating to Plaintiff's medical history dating back to at least 1991, and perhaps further. *See* fn. 1 (supra). As for Plaintiff's immediate condition, the Medical Director had before him Plaintiff's examination and test results performed by the pulmonary specialist, Dr. Schoenberger. Dr. Schoenberger concluded that Plaintiff's pulmonary function study was "entirely normal" and that Plaintiff had "a well documented history of asthmatic bronchitis which appear[ed] to be under excellent control at the moment." (Ltr. by Dr. Schoenberger to Dr. Finnerty dated 5/30/95.) Before him, also, was an evaluation form from Plaintiff's own physician, Dr. Finnerty, that indicated Plaintiff was capable of working an eight hour day. This, of course, was accompanied by a follow-up letter (dated several days later) by Dr. Finnerty explaining that by so stating, he did not mean to imply that Plaintiff was, in fact, ready to resume work at that moment. The letter, however, provided no information or data disputing Dr. Schoenberger's assessment, nor even did it give a basis for Dr. Finnerty's opinion that Plaintiff was still disabled. As a result, the Medical Director apparently concluded that Plaintiff was able to return to work.

The Plaintiff argues that medical personnel of the Disability Plans knew that Plaintiff was asthmatic and that she could suffer an attack without warning. She also argues that she was improperly decertified notwithstanding her own doctor's letter that she was still disabled.

These arguments notwithstanding, the Court finds the Medical Director's final decision to be reasonable and, therefore, not arbitrary or capricious. The Court recognizes that asthma can be a dangerous illness, especially when an attack occurs.

But there simply was no evidence before the Medical Director that such an attack was imminent or even likely. In the absence of a more detailed response from Dr. Finnerty as to why Plaintiff could not return to work given Dr. Schoenberger's detailed examination and conclusion that Plaintiff's asthma was "under excellent control at the moment," the Medical Director was left with little choice but to uphold the decertification decision. So, too, the Court finds no basis to disturb his decision.

### *Citibank's Motion For Summary Judgment*

#### *The Americans with Disabilities Act ("ADA")*

■ The gravamen of Plaintiff's claim under the ADA is that she was terminated because of her disability and that Defendant failed to grant her a reasonable accommodation. *See* First Amend. Compl., Counts Three and Four. The accommodation Plaintiff alleges was leave from work with time enough to stabilize her medical condition. Citibank opposes on the basis that Plaintiff was not a "qualified" individual insofar as she claimed to be totally disabled and could not, therefore, perform essential functions of her job, such as coming to work regularly. *See Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir.1994). Moreover, Citibank argues that the ADA does not require an employer to give indefinite leave to an employee as a reasonable accommodation.

■ In order for the Plaintiff to prevail on an ADA claim alleging failure to reasonably accommodate a disability, she must show that she is 1) a "qualified" person with a "disability," 2) that there was some reasonable accommodation denied to her and, 3) that such accommodation would have enabled her to perform the essential functions of her job. *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993), *see also* 42 U.S.C. § 12111(8) (1994). If such evidence is produced, it is up to the employer to submit rebuttal evidence. The

ultimate burden, however, remains with the Plaintiff. *Barth* at 1186; *see also McDonnell–Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

There is no dispute that Plaintiff and her physician (Dr. Finnerty) felt that it was not possible for Plaintiff to return to work as of at least June 12, 1995 (when Dr. Finnerty sent his follow-up letter stating that the Plaintiff was still disabled). (Ltr. of Dr. Finnerty to David Charrier, June 12, 1995.) Also undisputed is that Plaintiff had not returned to work as of September 1, 1995 (approx. 78 days later), when Citibank terminated her employment. If the only question before the Court was whether a 78–day leave of absence to recover from an aggravated disability is a reasonable accommodation under the ADA, then resolution on summary judgment would be more problematic. That is not the case here, however.

■ As Citibank correctly points out, what Plaintiff was seeking was an indefinite leave period, something an employer is not required to grant under the ADA. *See Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1169 (10th Cir.1996) (summary judgment for Defendant appropriate where plaintiff failed to present evidence of the expected duration of her leave, despite physicians report that impairment was not expected to be permanent); *see also Tyndall v. National Educ. Centers,* 31 F.3d 209, 213 (4th Cir.1994) (employee who cannot meet the attendance requirements of a job is not a "qualified" individual under the ADA). Although Plaintiff disputes whether, in fact, indefinite leave was what was being requested, the Court again looks to Dr. Finnerty's June 12 letter. After stating that Plaintiff was 60 percent improved, he closes his letter with the following: "[S]he still has a long way to go. I will keep you posted of

her status and emphasize again that she is not ready to return to work." (Finnerty Ltr.) In the Court's view, such an open-ended representation by Plaintiff's physician, without more, could only leave Citibank to conclude that Plaintiff's recovery period would be indefinite. As a result, Citibank cannot be held liable under the ADA for terminating Plaintiff when her own physician gives no estimate as to the expected duration of her "total disability."

Accordingly, the Court concludes that no reasonable juror could find that Plaintiff either was a qualified individual under the ADA (Count Three) able to fulfill the essential duties of her job (reporting to work), or that Citibank was required to grant indefinite leave to Plaintiff as a reasonable accommodation (Count Four).

### *Family and Medical Leave Act ("FMLA")*

■ Finally, there is the claim brought pursuant to the FMLA. The FMLA was enacted by Congress to allow employees to take up to twelve weeks of uncompensated leave for various family or medical matters. *See* 29 U.S.C.A. § 2612(a)(1) (1994). The Plaintiff alleges that Citibank violated the act by terminating her within the 12–week period despite her medical disability. The record does not support this argument.

As the undisputed facts show, Plaintiff became disabled on April 26, 1995. Twelve weeks from that point would have been July 19, 1995. Plaintiff was not terminated until September 1, 1995.[3] Plaintiff's FMLA claim, therefore fails as a matter of law.

In addition, Citibank argues that two further reasons warrant dismissal of this count: 1) the FMLA claim is time-barred, and, 2) Plaintiff never requested leave under the FMLA.

---

**3.** It is of no consequence that Plaintiff's termination date was effective as of June 7, 1995, because Citibank paid the premiums on Plaintiff's health benefits (as required under the

ADA) until she was actually terminated on September 1, 1995. Citibank Ex. O at D–00960.

■ Under the FMLA a claimant must bring an action within two years of "the last event constituting the alleged violation." 29 U.S.C. § 2617(c)(1) (1994). In cases where the violation is alleged to have been "willful" that period is extended to three years. 29 U.S.C. § 2617(c)(2) (1994). Citibank's actions at issue here arguably began as early as June 1995, though suit was not filed until May 20, 1998. Therefore, in order for Plaintiff to maintain her FMLA cause of action, she must qualify for the three-year limitation period. Unfortunately, neither the First Amended Complaint nor the facts of the case support a charge of willfulness against Citibank.

■ A review of the First Amended Complaint and its FMLA Count reveal no express or implied allegation of "willful conduct" on the part of Citibank. First Amend. Compl. ¶¶ 64–74. Willful conduct in this context is generally viewed as an employer that knows its conduct to be wrong or has shown reckless disregard for the matter in light of the statute. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).[4] Moreover, the Plaintiff simply has produced no evidence at all of willfulness, even giving her all factual inferences. If anything, Citibank's continued payment of Plaintiff's health benefits until September 1, 1995, some five weeks after any such FMLA leave would have ended (on July 19), shows just the opposite. As a result, the Court concludes that there is no allegation or evidence of willfulness upon which a reasonable juror could find that the three year limitation period applies and that Count Five (FMLA) must be dismissed as time-barred.

■ Although dismissal is proper under either of the preceding reasons, the Court wishes briefly to address the remaining basis for why the FMLA count must be dismissed. Simply, it is an undis-

puted fact that Plaintiff never expressly sought leave under the FMLA. Despite Plaintiff's position that the FMLA should somehow have been automatically triggered when her disability leave was denied, the Plaintiff offers no authority that the FMLA is self-executing. In fact, the FMLA itself defines "eligible employee" as "an employee who has been employed—(i) for at least 12 months by the employer *with respect to whom leave is requested under section 2612 of this title ...*" 29 U.S.C. § 2611 (1994). Here, Plaintiff was advised in writing of her FMLA option on at least three occasions and further told that she affirmatively had to seek such leave. (Letters from Joan Huff, 5/11/95, 6/12/95 and 6/29/95, which included a separate notice concerning FMLA leave, *see* Decl. of David Charrier, ¶ 9, Def. Ex. E.) Notwithstanding, Plaintiff never expressly requested FMLA leave and, as a result, the Court concludes that she cannot now complain that it was denied to her.

## CONCLUSION

The parties are in agreement that the ERISA claim is ripe for summary judgment and the Court rules in favor of the Defendant Disability Plans on that issue. In so ruling, the Court holds that the Medical Director's decision was not arbitrary or capricious and was, in fact, reasonable. The Disability Plans' motion for summary judgment, therefore is granted, while the Plaintiff's motion for partial summary judgment is denied.

As for Defendant Citibank's Motion for Summary Judgment, the Court similarly concludes that judgment as a matter of law is appropriate. The Plaintiff cannot support a cause of action under the ADA because Citibank was not obligated to grant her a period of indefinite leave. In addition, the Court concludes that the FMLA claim cannot stand because: 1)

---

4. Although *McLaughlin* was a Fair Labor Standards Act case, it is analogous because that Act shares identical language with regard to the two or three year (for "wilfullness") limitation period found in the FMLA.

Plaintiff was not terminated until after the 12–week FMLA period had passed; 2) a two-year statute of limitations applies and therefore Plaintiff is time-barred; and, 3) Plaintiff never actually requested leave under the FMLA. An appropriate order accompanies this memorandum.

## ORDER

Upon consideration of the competing motions for summary judgment in this case, the oppositions and replies thereto, and the oral argument in this case heard on May 24, 1999, it is by the Court this 27th day of May 1999

**ORDERED** that the Motion for Summary Judgment filed by the Defendant Disability Plans (the Short–Term Disability Plan and the Long–Term Disability Plan) is **GRANTED** and Count One of the First Amended Complaint (ERISA) is **DISMISSED with prejudice;** it is further

**ORDERED** that Defendant Citibank's Motion for Summary Judgment is **GRANTED** and Counts Three and Four (ADA claims against Citibank), and Five (FMLA claim against Citibank) are **DISMISSED with prejudice;** it is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED;** it is further

**ORDERED** that the remaining portion of Count Ten (ERISA against Citibank), withdrawn during oral argument on May 24, 1999, by the Plaintiff, is **DISMISSED with prejudice;** it is further

**ORDERED** that judgment is entered for Defendants and this case is **DISMISSED;** and it is further