**Carolyn BUFORD, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**No. CIV.A. 02–1059 (JDB).**

United States District Court, District of Columbia.

Oct. 29, 2003.

Laura A. Stefani, Michael J. Kator, Kator, Parks & Wieser, PLLC, Washington, DC, for plaintiff.

James L. Marketos, Mary–Ellen Noone, Berliner, Corcoran & Rowe LLP, Washington, DC, for defendant.

## MEMORANDUM OPINION

BATES, District Judge.

Presently before the court in this action seeking to recover benefits pursuant to the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, are the cross motions for summary judgment filed by plaintiff Carolyn Buford and defendant UNUM Life Insurance Company of America ("UNUM"). For the reasons that follow, the Court will grant defendant's motion and deny plaintiff's motion, and accordingly judgment will be entered in favor of defendant.

## BACKGROUND

The following facts are uncontroverted. UNUM is a health insurer. Plaintiff was employed at the Federal National Mortgage Corporation ("Fannie Mae") as a director of auditing, from February 1993 until August 1999. During her time working at Fannie Mae, plaintiff was a participant in the "Choice Flexible Benefit Package" and elected to be covered by a long-term disability benefits plan insured by UNUM (the "Policy"). The Policy constitutes an "employee welfare benefit plan" or "welfare plan" as that term is defined in ERISA, 29 U.S.C. § 1002(1).

The Policy provides for the payment of benefits to plaintiff in the event she becomes "disabled." "Disabled" is defined in the Policy as follows:

You are disabled when UNUM determines that: you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 36 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

UASP00574.[1] In turn, "regular occupation" is defined in the Policy in the following way:

Regular occupation means the occupation you are routinely performing when your disability begins. UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

UASP00593–94. With respect to a mental disability, the Policy limits the payment of benefits to a period of twenty-four months (except under certain circumstances not relevant to the facts of this case). "Disabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 24 months." UASP00580.

After plaintiff ceased her work at Fannie Mae, she submitted a disability claim to UNUM for long-term disability benefits under the Plan. Plaintiff claimed neurological (cervical spondylosis, cervical radiculopathy, and myofascial pain syndrome) and mental (anxiety and depression) disabili-

---

1. UNUM filed the Administrative Record for plaintiff's claim on October 29, 2002. UASP numbers indicate pages from the Policy materials UNUM submitted as Part 3 of the Administrative Record. UACL numbers indicate pages from plaintiff's claim with UNUM and were filed as Parts 1 and 2 of the Administrative Record.

ties. In February 2000, UNUM began making monthly payments on the claim in the approximate amount of $5,761. UNUM continued making payments to plaintiff until November 2000.

On January 2, 2001, UNUM notified plaintiff by letter that it would no longer pay benefits to her because it considered plaintiff no longer to be disabled. Defendant cited a lack of "objective data" supporting plaintiff's continued disability claim as the reason for making this determination. By letter dated January 8, 2001, plaintiff informed defendant that she intended to appeal the decision to discontinue her disability benefits and that she would obtain and forward documentation to support her appeal. On March 9, 2001, defendant informed plaintiff that it had completed its review of her claim and determined that the denial of benefits was appropriate. Defendant concluded that plaintiff's disability did not prevent her from working in the general occupation of auditing.

Plaintiff subsequently sought to submit, and defendant agreed to consider in a review on appeal, further information regarding her claim. Plaintiff submitted such materials on March 27, 2001. On May 24, 2001, defendant notified plaintiff that her appeal was denied and that the denial of her benefits beyond November 20, 2000, was appropriate. Defendant reiterated its conclusion that plaintiff could be gainfully employed as an auditor and that there was a lack of objective evidence to support plaintiff's claims.

On May 31, 2002, Plaintiff filed the present action in this Court against UNUM for violating ERISA by refusing to continue paying her disability benefits. Defendant filed its motion for summary judgment on October 29, 2002, and plaintiff filed her cross motion for summary judgment on the same day. A motions hearing was held on January 7, 2003.

## STANDARD OF REVIEW

### Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal

citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. 2505.

**Review of UNUM's Termination of Benefits**

 Plaintiff seeks review of UNUM's decision to terminate her benefits pursuant to § 1132(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that "a denial of benefits ... is to be reviewed under a *de novo* standard unless the benefit plan gives to the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A more deferential standard of review therefore applies where a plan gives discretionary authority to the administrator. However, the Court in *Firestone* also noted that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id.* at 115, 109 S.Ct. 948 (quoting Restatement (Second) of Trusts § 187, Comment *d* (1959)).

In determining whether a plan grants discretionary authority to the administrator or fiduciary, the D.C. Circuit has noted that a reviewing court must focus on more than whether the word "discretion" is invoked in the plan language; instead, "[w]hat counts ... is the character of the authority exercised by the administrators under the plan." *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1453–54 (D.C.Cir. 1992). Here the language of the plan at issue provides:

When making a benefit determination under the policy, UNUM has discretionary authority to determine [the insured's] eligibility for benefits and to interpret the terms and provisions of the policy.

(UASP00570). Examining the character of the authority granted to UNUM by the plain language of the Policy, it is clear that the authority includes discretion not only to determine eligibility for benefits but also to construe the terms of the Policy. Plaintiff contends that the fact that the Policy grants UNUM discretionary authority was not adequately conveyed to employees covered by the Policy. Plaintiff argues that there is no explicit declaration that this language results in deferential review by courts; no definition of the term "discretionary authority" or explanation is provided to employees; and the plan language granting UNUM discretionary authority is "buried" in the Certificate Section that is generally used to provide information to the purchasing employer and not to employees.

 In *Herzberger v. Standard Insurance Co.*, 205 F.3d 327 (7th Cir.2000), the Seventh Circuit held that a plan that did not give an employee adequate notice of the fact that the plan administrator's discretion authorized it to make judgments largely insulated from judicial review was not entitled to the more deferential standard of review. *Herzberger*, however, involved a plan whose terms did not explicitly create discretionary authority; instead, the defendant in *Herzberger* attempted to show that the plan provided for discretion by implication. *See, e.g., Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 523 (4th Cir.2000) ("We have not, however, always required an explicit grant of discretionary authority. Rather, we have recognized that a plan's terms can create discretion by implication."). What was deemed by the Seventh Circuit as providing inadequate notice was "the mere fact that a plan requires a determination of eligibility or

entitlement by the administrator, or requires proof or satisfactory proof of the applicant's claim, or requires both a determination and a proof (or satisfactory proof)". *Herzberger*, 205 F.3d at 332. Where, as in the present case, the plan language explicitly creates discretionary authority, the question of whether adequate notice was provided to the employee is not relevant. *See Feder*, 228 F.3d at 522 ("We will find discretionary authority in the administrator if the plan's language expressly creates discretionary authority.").

■ Plaintiff also contends that, because UNUM benefitted from its decision to terminate plaintiff's benefits, the potential conflict of interest involved in UNUM's decision requires the court to review that decision *de novo*. The mere presence of a potential conflict of interest, however, does not automatically activate *de novo* review. As the court stated in *Hamilton v. AIG Life Insurance Co.*, 182 F.Supp.2d 39 (D.D.C.2002), "[w]hile recognizing the presence of a potential conflict, in obeisance to *Firestone*, the court reviews [the insurer's] decision for abuse of discretion." *Id.* at 44.

Although different circuits employ different methods for applying the standard of review when a potential conflict of interest exists, the D.C. Circuit has not yet addressed the issue.[2] In *Hamilton*, the court proceeded to assess the appropriate level of deference within the abuse of discretion standard of review by examining plaintiff's contentions that a conflict of interest might actually have affected the administrator's decision-making. In the present case, plaintiff has proffered neither evidence nor persuasive arguments

beyond the assertion that a conflict of interest existed because UNUM's "profits were reduced whenever it awards benefits." Pl. Reply at 2; *see also* Pl. Mem. in Support of Summ. J. at 7. In her opposition to defendant's motion for summary judgment, plaintiff contends that great weight should be given to the presence of UNUM's conflict of interest because UNUM's claim that it relied on statements of plaintiff's treating physicians is unsupported by the record evidence. Even viewing this fact in the light most favorable to plaintiff, it does not militate very strongly in favor of subjecting UNUM's decision to higher scrutiny. As instructed by *Firestone*, the Court will, however, bear in mind any inconsistency plaintiff points out as a "factor in determining whether there was an abuse of discretion" by UNUM. Accordingly, the Court applies a deferential standard of review and will not overturn UNUM's determination so long as that determination can be considered reasonable. *See Sampson v. Citibank*, 53 F.Supp.2d 13, 16 (D.D.C.1999) (citing *Block*, 952 F.2d at 1452).

## *ANALYSIS*

### Background of UNUM's Determination

Plaintiff sought and received treatment for her claimed neurological disability from her primary care physician Vera L. Sheen, M.D., and from several specialists including Pavel Klein, M.D., a neurologist at the Georgetown University Medical Center, Thomas R. Cupps, M.D., a rheumatologist, and Fraser C. Henderson, M.D., the director of neurosurgery of the spine and craniocervical junction and an assistant professor at Georgetown University Medi-

---

**2.** Furthermore, as the court in *Hamilton* noted, no court has shown a willingness to reverse a plan administrator's decision without some evidence that self-interested behavior affected the administrator's decision. 182 F.Supp.2d at 44 n. 3. Here, plaintiff has proffered no such evidence.

cal Center. As a result of her consultations with these doctors, plaintiff underwent a MRI scan of the cervical spine and brain, x-rays of the thoracic and lumbar spine, and an EMG of the upper and lower extremities. She was diagnosed with a well-documented C5 cervical radiculopathy secondary to degenerative disc disease and facet arthropathy. Dr. Henderson recommended an expansile laminoplasty as well as bilateral foraminotomies on sections of her spine. On May 31, 2000, plaintiff underwent the recommended procedures. For her claimed mental disability, plaintiff sought and received treatment from Dr. Sheen and Pamela Feeley, M.D.

During the course of plaintiff's treatment, UNUM conducted several medical reviews and clinical referrals of the claim file. In March 2000, Heather DiFalco, R.N., conducted a review of the records of Drs. Sheen, Feeley, Klein, Cupps, and others. Nancy W. Ball, M.D., a board-certified psychiatrist, conducted a clinical referral some time after August 2000. Thereafter, in October 2000, Therese O'Sullivan, a registered nurse certified in psychiatry, performed a review of plaintiff's claim and records. Then in November 2000, Glenn E. Higgins, Ph.D., a clinical neuropsychologist, also reviewed plaintiff's claim and records. Based on the analyses and conclusions made by DiFalco, Ball, O'Sullivan, and Higgins, UNUM decided that plaintiff was no longer entitled to benefits under the Policy. UNUM advised plaintiff of its decision by letter in January 2001.

Regarding plaintiff's mental disability, UNUM cited the medical reviews performed by Ms. O'Sullivan and Dr. Higgins concluding that the medical documentation from Drs. Sheen and Feeley failed to provide objective data supporting a continued mental disability. UNUM explained that plaintiff's psychiatric symptoms appeared to be directly related to her particular environment, and not to her occupation as a director of auditing. Regarding plaintiff's neurological disability, UNUM concluded that plaintiff was entitled to benefits under the Policy through August 28, 2000 only. UNUM claimed that it based this decision primarily on its assessment that plaintiff's May 31, 2000, cervical spine surgery was successful, the fact that the reasonable recovery period for a sedentary position such as plaintiff's position as an auditor is eight weeks, and the fact that UNUM found that plaintiff had recovered during the eight week period.

In response to plaintiff's notification that she intended to appeal UNUM's January 2001 decision, UNUM undertook its statutorily required independent review of the claim denial, which consisted of a further analysis of the claim file including all previously submitted medical documentation. On March 9, 2001, UNUM advised plaintiff's counsel that its independent review had been completed and that it had decided to uphold its previous denial. By letter dated March 27, 2001, plaintiff's counsel submitted additional documentation in support of plaintiff's appeal of the denial of benefits. UNUM submitted the claim file for another medical review to Alan M. Elkins, M.D., a board-certified psychiatrist. On May 24, 2001, UNUM advised plaintiff's counsel that the additional information submitted was insufficient to reverse the previous determination that the denial of benefits beyond November 2000 was appropriate.

**Reasonableness of UNUM's Determination**

In reviewing UNUM's decision to terminate plaintiff's benefits under a deferential standard, the Court considers whether that decision was reasonable. *See Block*, 952 F.2d at 1452. "[I]f there is more than one action that is 'reasonable,'

the Court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Id.* (internal quotations omitted). A decision will be found to be reasonable "if it is 'the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Fitts v. Federal National Mortgage Assoc.,* 77 F.Supp.2d 9, 19 (D.D.C.1999), *rev'd on other grounds,* 236 F.3d 1 (D.C.Cir.2001)(quoting *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997)). Substantial evidence means "more than a scintilla but less than a preponderance." *Leonard v. Southwestern Bell Corp. Disability Income Plan,* 341 F.3d 696, 701 (8th Cir.2003) (internal citation omitted). In taking into account the potential conflict of interest in this case, the Court will also consider in its review whether UNUM's decision "strayed outside the bounds of reasonableness to become an abuse of discretion." *Pari–Fasano v. ITT Hartford Life and Accident Ins. Co.,* 230 F.3d 415, 419 (1st Cir.2000)(internal citations omitted).

UNUM contends that, in reaching its decision to terminate plaintiff's disability benefits, it engaged in a deliberate, principled reasoning process and that the decision was supported by substantial evidence. With regard to the reasoning process, UNUM avers that it gathered medical documentation from plaintiff's primary care physician and specialists; submitted the documentation to in-house physicians for review, advice, and recommendations; prepared a vocational review to understand fully the physical requirements and essential duties of an auditor; and engaged in a multi-layered appeal process that allowed plaintiff to submit additional documentation for UNUM's review and consideration. Plaintiff does not dispute UNUM's assertions with respect to the *process* of UNUM's reasoning and

decision-making. Instead, the crucial point of contention between plaintiff and UNUM is whether UNUM's decision to terminate plaintiff's benefits was supported by substantial evidence.

UNUM rests its decision to terminate plaintiff's long term disability benefits on evidence that plaintiff was neither neurologically nor mentally disabled. UNUM contends that, in making its decision, it relied on the fact that both Dr. Feeley and Dr. Sheen answered "yes" in response to the question posed to them by UNUM: "Do you think that Ms. Buford will be able to return to her previous occupation as the Director of Auditing with the Federal National Mortgage Association? With another employer?" *See* UACL00258, 268. Plaintiff counters that the fact that plaintiff's physicians merely responded "yes" to a question posed by UNUM does not mean that they offered the opinion that plaintiff was able to return to work. The Court concludes, however, that it was not unreasonable for UNUM to rely on the physicians' affirmative answers as representations of the physicians' conclusions that plaintiff was no longer prevented from returning to work by a disability.

Plaintiff also argues that the question posed by UNUM does not specify a date by which plaintiff's physicians believed she would be able to return to work and that, therefore, UNUM's determination that her disability benefits should terminate after August 28, 2000, was unreasonable. UNUM explains that, in coming to its determination that plaintiff was not eligible for long term disability benefits after August 28, 2000, it also took into account the facts that: (1) plaintiff underwent surgery in May 2000 to alleviate the pain related to her neurological condition; (2) Dr. Henderson found that following the surgery, plaintiff experienced no pain be-

yond a mild left posterior neck spasm, reported recovery of normal strength and sensation, was neurologically intact, and that plaintiff's cervical spine x-rays showed good alignment, UACL00214; (3) plaintiff's medications remained stable and unchanged as of October 27, 2000; and (4) for the period from July through September 2000, plaintiff's doctor placed no restrictions on her. The Court concludes that these indicators from the record constitute "substantial evidence"—which must be more than a scintilla, but can be less than a preponderance—supporting UNUM's choice of August 28, 2000, as the date after which plaintiff was able to return to work.

### A. Plaintiff's Claim of Physical Disability

 With respect to UNUM's determination regarding plaintiff's claims of physical—i.e., neurological—disability, plaintiff argues that UNUM incorrectly and unreasonably concluded that she no longer suffered from disabilities. Plaintiff contends that from June through September 2000, her physicians' reports explicitly list her impairments, including significant cervical degenerative disease with loss of disk space height, anterior osteopytes, sclerosis, and migraine headaches; that Dr. Cupps' September 2000 report noting plaintiff had an excellent clinical outcome from her surgery also states that she had "C-spine radiolopathy/chronic neuropathic pain" including "persistent pain in her left arm," UACL00263; and that the conditions addressed by the surgery were secondary to diseases (degenerative disc disease and facet arthropathy) from which plaintiff still suffers, UACL00422. UNUM maintains, however, that the administrative record as a whole supports its conclusion that plaintiff is no longer physically disabled.

UNUM argues that the administrative record indicates that plaintiff either does not suffer from cervical degenerative disease or that this disease is not disabling. UNUM notes that Dr. Klein's medical records based on actual physical examinations of plaintiff do not mention cervical degenerative disease, see UACL00454–57, 418–19, while his March 26, 2001 note, which states that plaintiff suffers from "cervical spine degenerative disease" is not based on an actual physical examination. UNUM observes that Dr. Henderson's medical notes, also based on actual physical examinations of plaintiff, do not reference cervical degenerative disease. See UACL00218–19, 199–200, 214–16. UNUM also points out that while Dr. Cupps' note of February 9, 2000, mentions "degenerative disc disease," his post-surgery medical record does not. Furthermore, UNUM argues that because Dr. Cupps did not see fit to schedule a follow-up examination after the surgery, UNUM was reasonable to question the existence, or at the very least the disabling effect, of the disease. With respect to Dr. Sheen's report of August 7, 2000, noting that plaintiff experienced migraines, UNUM claims that it concluded that this observation by Dr. Sheen was not enough to counter the findings and notes of Drs. Henderson and Cupps that indicated that plaintiff was "neurologically intact."[3] UNUM also argues that Drs. Sheen, Klein, and Cupps attributed plaintiff's headaches to the problems for which plaintiff underwent a cervical laminoplasty on May 31, 2000, and that Dr. Henderson concluded the procedure was successful. UACL00288, 418, 423.

UNUM contends that, when read in the context of the entire administrative record,

---

**3.** At the hearing held on January 7, 2003, defendant's counsel explained that she understood "neurologically intact" meant possessing "no disabling neurological problems."

Dr. Cupps' September 2000 report does not indicate that plaintiff continues to be disabled. UNUM notes that Dr. Henderson found plaintiff to be virtually pain free with normal strength and sensation in an examination on August 28, 2000. Furthermore, Dr. Cupps' observation two weeks later that plaintiff "noted excellent clinical outcome," coupled with Dr. Cupps' decision not to schedule a follow-up examination, supports Dr. Henderson's finding that plaintiff was "neurologically intact" and not disabled.

The standard of review in this case requires the Court to review UNUM's determination of plaintiff's eligibility for benefits for reasonableness. For its decision to be reasonable, UNUM need only show that it based its determination on substantial evidence—which is more than a scintilla, but can be less than a preponderance of evidence. The Court concludes that the facts from the record that UNUM claims it relied upon in determining that plaintiff was not physically disabled after August 28, 2000, constitute substantial evidence to support UNUM's determination. Furthermore, taking into account the potential conflict of interest in this case, the Court also concludes that UNUM's decision regarding plaintiff's claim of physical disability did not stray outside the bounds of reasonableness to become an abuse of discretion.

### B. Plaintiff's Claim of Mental Disability

■ With respect to plaintiff's mental disability, UNUM determined that any anxiety and depression that plaintiff suffered did not disable her from performing the material and substantial duties of her regular occupation beyond August 28, 2000. UNUM based this determination on four factors: (1) Ms. DiFalco's opinion that symptoms of depression usually improve within 6 to 8 months with proper treatment; (2) Dr. Feeley's notes, which indicated that plaintiff's medications had remained stable and unchanged; (3) the fact that, for the period of July through September 2000, Dr. Feeley placed no restrictions on plaintiff; and (4) the two internal reviews conducted by Ms. O'Sullivan and Dr. Higgins that concluded that plaintiff's issues appeared to be specifically related to her job and not more broadly to her occupation. UNUM also argues that, even if plaintiff is mentally impaired, the impairment is directly related to her work environment and not to the occupation of director of auditing. This distinction is significant because, according to the terms of the Policy, "disability" is defined as being limited from performing the material and substantial duties of one's "regular occupation" due to sickness or injury, *see* UASP00574, and "regular occupation" is defined by the Policy as

... the occupation you are routinely performing when your disability begins. UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

UASP00593–94. Hence, UNUM's determination that plaintiff's mental impairment did not limit her from performing her occupation was also a determination that plaintiff was not disabled and not eligible for disability benefits.

Plaintiff argues that UNUM unreasonably discounted Dr. Feeley's letter of March 21, 2001, in which she stated that plaintiff "is unable, due to her illnesses, to perform the duties involved in auditing and management, for which she has been educated and trained." UACL00085. Plaintiff also argues that UNUM failed to take into account portions of Dr. Feeley's notes that indicated that plaintiff suffered from men-

tal conditions caused by issues beyond those that were work-related and that plaintiff was unable to work in any work setting. Finally, plaintiff contends that UNUM's determination that plaintiff was not mentally disabled from working was unreasonable because UNUM never examined plaintiff, performed an analysis, or sent information requests to plaintiff's physicians specifically addressing the question whether plaintiff's symptoms prevented her from performing the activities and tasks required by her occupation.

With respect to Dr. Feeley's March 21, 2001 letter, UNUM explains that it questioned Dr. Feeley's assessment that plaintiff was not able to return to work, not because Dr. Feeley made that assessment subsequent to UNUM's denial of benefits, but because it conflicted with prior opinions that Dr. Feeley had stated in the record, see UACL00258 and UACL00433, and because, upon reviewing Dr. Feeley's newly submitted office notes covering the period of October 16, 2000, through February 12, 2001, UNUM determined that Dr. Feeley failed to provide objective evidence that plaintiff was experiencing cognitive difficulties. With respect to plaintiff's contention that UNUM failed to take into account Dr. Feeley's observations on plaintiff's non-work-related mental issues, UNUM maintains that the administrative record, when taken as a whole, supports its determination that plaintiff's mental impairments did not disable her from performing the tasks and activities involved in her occupation. UNUM points out that many of the non-work-related issues noted by Dr. Feeley date back many years and did not previously disable plaintiff from performing her regular occupation, and that plaintiff has not explained why such issues are disabling now when they were not previously. UNUM also underscores the fact that, with respect to plaintiff's contention that the physicians' statements UNUM relied upon were not made with reference to the specific tasks and activities involved in plaintiff's occupation, UNUM enclosed a description of plaintiff's occupation when it asked Drs. Feeley and Sheen whether they thought plaintiff was capable of returning to work and Drs. Feeley and Sheen answered UNUM's question with the knowledge of what plaintiff's occupation entails.

The same deferential standard of review applies to UNUM's determination regarding plaintiff's claims of mental disability. The Court notes, however, that UNUM's bases for its decision to deny plaintiff benefits for her claimed mental disability are less solid than the bases on which it made its physical disability determination. First, UNUM relied on the opinion of Ms. DiFalco that symptoms of depression generally improve within six to eight months with proper treatment. While Ms. DiFalco is a health care professional, she is not specially trained in the area of mental health. UNUM also relied on the fact that, according to Dr. Feeley's notes, plaintiff's medications remained stable and unchanged. At the motions hearing on January 7, 2003, UNUM's counsel conceded that it may not be reasonable to conclude that a patient's condition is improving based on the fact that a patient's medication remained unchanged. UNUM also placed weight on the conclusion from the internal reviews conducted by Ms. O'Sullivan and Dr. Higgins. Although both Ms. O'Sullivan and Dr. Higgins are specialists in the area of mental health, it must be noted that they, along with Ms. DiFalco, are employed by UNUM, which raises the issue of the potential conflict of interest in UNUM's determination.

Having noted the relative weaknesses in the bases for UNUM's determination regarding plaintiff's mental disability, however, the Court concludes nonetheless that

UNUM's determination was not *unreasonable*. UNUM has shown "substantial evidence"—certainly more than a scintilla, although in the case of plaintiff's mental disability claim, probably less than a preponderance—in support of its determination. Although the Court may discern that a different determination would also have been reasonable, as the D.C. Circuit instructs in *Block*, "the Court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Id.*, 952 F.2d at 1452. With respect to the potential conflict of interest in the matter of the determination of plaintiff's mental disability, upon careful examination of the entire record and the arguments and submissions of the parties, the Court concludes that UNUM's decision regarding plaintiff's claim of mental disability did not stray outside the bounds of reasonableness to become an abuse of discretion. UNUM's motion for summary judgment on the issue of whether its termination of plaintiff's long-term benefits was reasonable will therefore be granted, and plaintiff's cross-motion for summary judgment on the same issue will be denied.

### Attorney's Fees and Costs

UNUM seeks an award of attorney's fees and costs. ERISA grants courts discretion to award attorney's fees and costs to either party. 29 U.S.C. § 1132(g)(1). When determining whether to award fees and costs, courts take into account the following five factors: (1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy such an award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries, and the significance of the legal issue involved; and (5) the relative merits of the parties' position. *Eddy v. Colonial Life Ins. Co. of America*, 59 F.3d 201, 207 (D.C.Cir.1995).

The Court does not discern bad faith on the part of plaintiff in bringing this case against UNUM. There is therefore no need to deter plaintiffs such as Ms. Buford from bringing claims against an insurer to recover benefits believed to be unfairly terminated. Furthermore, the relative merits in the parties' positions did not so clearly favor UNUM that an award of attorney's fees and costs should be made. The Court therefore concludes that an award of attorney's fees and costs is not appropriate in this case.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment will be granted and plaintiff's cross-motion for summary judgment will be denied. The Court will also deny UNUM's request for the award of attorney's fees and costs. A separate order accompanies this Memorandum Opinion.

### ORDER

Upon consideration of the cross-motions for summary judgment of plaintiff Carolyn Buford and defendant UNUM Life Insurance Company of America, the submissions of the parties, and the entire record herein, and for the reasons stated in the Memorandum Opinion issued on this date, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is DENIED;

2. Defendant's motion for summary judgment is GRANTED. Judgment shall be entered in favor of defendant and against plaintiff, and no attorney's fees or costs will be awarded; and

3. The clerk's office shall CLOSE this case in its entirety.